IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-02272-WYD

CAROLINE D. MONTOYA,

 Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

 Defendant.

**ORDER**

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for Supplemental Security Income Benefits ["SSI"].  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I. BACKGROUND

Plaintiff was 44 years old when she applied for SSI.  (Administrative Record ["AR"], ECF No. 11, at 20, 140.)  She claims she became disabled beginning January 1, 2001, due to depression, anxiety, back problems, migraines, psoriasis, poor memory, and arthritis.  (*Id.* 140, 155.)[1]  She has a high school education.  (*Id.*)

Plaintiff's application for SSI was denied on July 15, 2009.  (AR 63-65.)  Plaintiff then requested a hearing (*id.* 66-67) which was held on August 2, 2011.  (*Id.* 31-48.)

---

[1] However, because Plaintiff solely seeks SSI, the earliest date she could have been entitled to SSI benefits was the date she protectively filed for benefits, January 27, 2009.  *See* 20 C.F.R. § 416.335.

On August 28, 2011, Administrative Law Judge ["ALJ"] William Musseman issued an unfavorable decision denying Plaintiff's claim for benefits under the Act.  (*Id.* 8-21.)

In the sequential evaluation process required by law, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since January 27, 2009, the application date.  (AR 12.)  At step two, the ALJ found severe impairments of "affective disorder, anxiety, and disorder of the spine." (*Id.*)  At step three, he found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (*Id.* 12-13.)

The ALJ then addressed Plaintiff's residual functional capacity ["RFC"].  (AR 13-19.)  He found that Plaintiff has the RFC "to perform light work as defined in 20 CFR 416.967(b) with a sit/stand option; occasional bending, squatting, and kneeling; no climbing ladders/scaffolds; no dealing with the general public; and no complex tasks (SVP-2 or less)." (*Id.* 13.)[2]  At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* 20.)  Based on the vocational expert's testimony, the ALJ found at step five that Plaintiff could perform jobs existing in significant numbers in the national economy such as addressing clerk, optical assembly, and electronics worker.  (*Id.*)  Therefore, the ALJ concluded that Plaintiff "has not been under a disability since January 27, 2009, the date the application was filed.  (*Id.* 21.)

---

[2] SVP (specific vocational preparation) is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job situation. U.S. Dep't of Labor, Employment & Training Admin.*, Dictionary of Occupational Titles*, vol. II, app. C, pt. III (4th ed. 1991), available at 1991 WL 688702.  A specific vocational preparation of 2 means that Plaintiff could learn how to do this position with a short demonstration, up to and including one month. *Id.*

The Appeals Council considered additional evidence submitted by Plaintiff and denied Plaintiff's request for review on June 24, 2013. (AR 1-5.) This made the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a). Plaintiff timely requested judicial review, and this appeal followed.

Plaintiff argues that the ALJ failed to express the RFC restrictions on a function-by-function basis, and did not give proper reasons for rejecting consultative examiner Dr. Grace's opinion or for giving greater weight to the nonexamining agency physician's opinion. Further, she asserts that the ALJ did not account for the physical restrictions in the medical opinion which was given significant weight. It is also argued that the ALJ erred in connection with the opinions of the treating psychotherapist Ms. Richards, as well as Dr. Vega and Dr. Valette. Finally, Plaintiff argues that the ALJ did not adequately account for all of the mental limitations in the opinion which he adopted.

II.   ANALYSIS

   A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quotation omitted).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Thus, I will not consider post-hoc arguments of the Commissioner. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

    B.    <u>The Merits of Plaintiff's Arguments</u>

        1.    <u>Plaintiff's Physical Impairments and the RFC Related to Same</u>

I first address the physical RFC and Plaintiff's argument that the ALJ did not have proper reasons for rejecting consultative examiner Dr. Grace's opinion or for giving greater weight to the nonexamining agency physician's opinion than that of Dr. Grace. Plaintiff also asserts that the ALJ did not account for the physical restrictions in the medical opinion which was given significant weight.

Dr. Grace opined that Plaintiff was limited to lifting 25 pounds "due to significant weakness in the left upper extremity as well as the back pain"; standing/walking for "up to four hours per day, limited by significant lower back pain and cervical pain, likely with pathology in the discs or vertebrae after significant trauma"; sitting "for up to six hours

-4-

per day, limited by the significant lower back pain"; postural limitations of occasional climbing, balancing, stooping, kneeling, crouching, and crawling due to exacerbation of back pain; manipulative limitations, including limited reaching, handling, feeling, and fingering with the left hand after possible tendon damage due to barbed wire incident and limited reaching and handling with the right upper extremity "due to cervical radiculopathy on the right side"; and limited environmental exposure. (AR 224-25.) The ALJ gave Dr. Grace's assessment "no great weight", finding the limitations are not supported by the examination findings or by the objective radiographic findings. (*Id.* 17.) Instead, the ALJ gave "significant weight" to the "well supported assessment" of nonexamining agency physician Alan Ketelhohn, M.D. I find error with this analysis.

      I first note that the ALJ's statement that he gave "no great weight" to Dr. Grace's opinion does not allow me to determine what actual weight, if any, was given the opinion. This was error, as an ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Moreover, an ALJ must weigh every medical opinion in light of the record evidence and the factors set out in the regulations. *See Carpenter*, 537 F.3d at 1270. The ALJ did not appear to do this. Indeed, he did not reference any factor other than supportability. This also was error. *See Andersen v. Astrue*, 319 F. App'x 712, 722 (10th Cir. 2009) ("the ALJ's apparent failure to consider any factor other than supportability makes the ALJ's reasoning insufficient . . . . [a]lthough supportability might prove determinative, that can only be decided after consideration of the other factors").

Moreover, the ALJ's finding that the limitations imposed by Dr. Grace are not supported by the examination findings is incorrect. Dr. Grace did a comprehensive examination and supported her decision about Plaintiff's back and neck pain and other impairments with many objective findings, including "atrophy in the left biceps and quadriceps, as well as forearm flexors"; "crepitus" in the left shoulder and bilateral knees; "muscle spasms of the bilateral trapezius in the paracervical range"; "tenderness to palpation over the posterior neck, posterial shoulders, as well as sacrum and bilateral SI joints"; uncoordinated gait; and "decreased sensation of digits four and five on left upper extremity". (AR 223-24.) Dr. Grace diagnosed Plaintiff with lower back pain and cervical pain, characterized by "some notable limitations with range of motion in the back", and uncontrolled psoriasis which would limit her environmental exposure. (*Id.*)

Further, to the extent the ALJ found Dr. Grace's limitations are not consistent with objective radiographic findings, Dr. Grace did not rely on those findings but on her own findings that supported her diagnoses and functional limitations. A doctor's statements about a claimant's condition or impairments "are specific medical findings" that the ALJ errs in rejecting in the absence of conflicting evidence. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).[3]

In any event, I find that Dr. Grace's limitations are not necessarily inconsistent with the objective radiographic findings. An X-ray showed "degenerative changes [in

---

[3] It was also not proper for the ALJ to discount Dr. Grace's opinion for not being supported by radiographic findings, when the ALJ failed to compare the radiographic findings to Dr. Ketelhohn's opinion. The Tenth Circuit has stated that an ALJ cannot summarily reject a physician's opinion for containing the same defect contained in the opinion which the ALJ accepted. *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir.1985).

the] lower lumbar spine." (AR 226.) A CT scan of plaintiff's cervical spine showed "multilevel degenerative changes", "degenerative disc disease", and "degenerative facet hypertrophy" which were moderate in severity. (*Id*. 292.) An MRI of Plaintiff's left shoulder showed "[d]egenerative changes [in the] AC joint" (*id*. 296), and of her right shoulder showed a "tear of the supraspinatus tendon," and "[d]egenerative changes [in the] AC joint." (*Id.* 297.) No evidence in the record suggests that the radiographic studies are not supportive of Dr. Grace's restrictions. The ALJ is making an improper lay opinion on this issue. *Winfrey v. Chater*, 92 F.3d 1017, 1022-23 (10th Cir.1996) (ALJ errs in substituting his medical judgment for that of a medical professional); *Langley*, 373 F.3d at 1121 (10th Cir. 2004) (ALJ may not make speculative inferences from medical reports, and may reject a physician's opinion "'outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*'" (emphasis in original) (quotation omitted).[4]

Finally, I note that agency physician Dr. Ketelhohn, whose opinion the ALJ found without explanation to be "well supported", gave "great weight" to the opinion of Dr. Grace in rendering his findings. (AR 56.) This makes sense, as an agency medical consultant's opinion must be supported by evidence in the case record. *Lee v. Barnhart,* 117 F. App'x 674, 687 (10th Cir. 2004) (citing SSR 96-6P, 1996 WL 374180, at *2). Dr. Ketelhohn adopted almost all of the limitations imposed by Dr. Grace,

---

[4] As Plaintiff points out, radiographic findings are not a direct test of functional capacity. While the tests visualize physical abnormalities, they do not directly indicate a person's capacity for standing. The ALJ does not have the medical expertise to compare these diagnostic test results with Dr. Grace's opinion of limitations.

-7-

including postural and manipulative limitations, except that he limited Plaintiff's lifting to 20 pounds (instead of 25). (*Id.* 56-57.) It defies logic for the ALJ to rely on Dr. Ketelhohn's opinion, but not Dr. Grace's opinion, when Dr. Grace's opinion is the basis of Dr. Ketelhohn's opinion. *See also Allison v. Heckler*, 711 F.2d 145, 147-48 (10th Cir. 1983) ("the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.)

Moreover, the ALJ erred as, without explanation, he did not include many of the limitations imposed by Dr. Ketelhohn even though he gave his opinion significant weight. Thus, as with Dr. Grace's opinion, Dr. Ketelhohn limited standing/walking to four hours per day and sitting to six hours per day. The ALJ, in contrast, simply stated that Plaintiff could do light work with a sit/stand option. However, a four hour limitation on standing/walking per day would arguably exclude light work. *See* SSR 83-14, 1983 WL 31254, at *4 ("The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking most of the workday). The need to alternate sitting and standing may also erode the sedentary job base. SSR 96-9p, 1996 WL 374185, at *7. Thus, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." *Id.* This specificity is also important as "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4. The ALJ erred as he did not specify the frequency of the need to alternate or the length of time needed to stand.

Moreover, the ALJ excluded Dr. Ketelhohn's manipulative limitations, environmental limitations, and some of his postural limitations without explanation. As in *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), a remand is required so that the ALJ can explain the evidentiary support for the RFC determination since the ALJ ignored certain restrictions by while adopting others. "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of disability". *Id.*

Plaintiff also argues that the ALJ erred as he did not conduct a function-by-function assessment of the RFC. Again, I agree, particularly in light of the fact that the ALJ erred in the weighing of the medical evidence by Drs. Grace and Ketelhohn. In assessing RFC the ALJ "'must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis ... and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.'" *Lawton v. Barnhart*, 121 F. App'x 364, 374 (10th Cir. 2005) (quoting SSR 96-8p, 1996 WL 374184, at *7). The ALJ "'must also explain how any material inconsistencies or ambiguities in the case record were considered and resolved'" and discuss "'why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* (quoting *id.*) A function-by-function evaluation is necessary in order to arrive at an accurate RFC. *Id.*

In the case at hand, the ALJ clearly did not comply with the requirements of SSR 96-8 which requires a function-by-function analysis of the seven strength demands, i.e.,

sitting, standing, walking, lifting, carrying, pushing, and pulling.  *See Alexander v. Barnhart*, 74 F. App'x 23, 28 (10th Cir. 2003).  Instead, he jumped directly to a finding that Plaintiff could perform light work with certain restrictions.  While this may be harmless error in some instances, I find it was not harmless error in this case.

This is best demonstrated by the ALJ's finding that Plaintiff needed to have a sit/stand option, without defining the amount of sitting/standing that Plaintiff could do.  This finding was made despite the fact that Dr. Ketelhohn's opinion which the ALJ gave "significant weight" to opined more particularly that Plaintiff could only stand/walk for four hours of an eight hour day and sit for six hours of an eight hour day.  The vocational expert was not advised of these limitations, and I am not convinced that a sit/stand option was adequate in light of the ALJ's finding that Plaintiff can do light work.  *See* SSR 83-15, *supra*; 20 C.F.R. § 416.967(b) (light work requires "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm and leg controls).[5]

Moreover, even though two of the three jobs the vocational expert identified are sedentary jobs (AR 46-47), the ALJ ignored the manipulative limitations imposed by Drs. Grace and Ketelhohn.  These limitations could impact Plaintiff's ability to perform these jobs, both of which require frequent reaching, handling and fingering.  *See* DICOT 209.587-101, 1991 WL 671697 (addresser job); DICOT 713.687-018, 1991 WL 679271

---

[5] I reject the Commissioner's argument that the ALJ's imposition of a sit/stand option "would reasonably accommodate a limitation to standing no more than four hours per day." (Resp. Br. at 15.) The Commissioner is incorrectly assuming that the vocational expert understood the sit/stand option to mean that the full eight hour work day would be split equally between sitting and standing. However, that is not consistent with the requirements of light work, which requires standing or walking for a total of approximately six hours in an eight-hour workday.

(optical assembler job).  Further, the sedentary jobs only amount to four hundred job positions in the region.  (AR 46-47).  This is well within the gray area for questionable numerical significance, and undermines the ALJ's assessment that the jobs exist in significant numbers.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145(10th Cir.2004) (650 to 900 statewide jobs is in the gray area, requiring the ALJ to address the numerical significance under the factors in *Trimiar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir.1992)).  Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision.  *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993).  This should also be rectified on remand.

      B.      <u>Plaintiff's Mental Limitations</u>

Plaintiff's treating therapist, Elizabeth Richards, a licensed clinical social worker, assessed Plaintiff as being extremely impaired in most areas of mental functioning.  (AR 264-66).  This opinion would most likely eliminate all jobs.  In fact, just one of the impairments—the inability to complete a normal work day and work week without interruption (*id.* 265, item 16)—would alone likely preclude all jobs.  The ALJ gave Ms. Richards' opinion "very little weight."  (*Id.* 16.)  Plaintiff argues, and I agree, that the ALJ did not have valid reasons for so seriously discounting the weight of her opinion.

The ALJ stated that he discounted the weight of Ms. Richards's opinion for three reasons: 1) she "is not a medical source"; 2) the ALJ would have expected a person with such limitations to have frequent hospitalizations, which is not the case as to Plaintiff; and 3) Ms. Richards' findings "are contradictory to other evidence of record"

-11-

(citing exhibit 15F). (AR 16). Plaintiff contends, and I agree, that none of these reasons warrant a significant discounting of her opinion.

The first reason, that Ms. Richards is not a medical source, is unsupported. She is a medical source who treated Plaintiff; she is simply not an "acceptable medical source" under the regulations. 20 C.F.R. § 416.913(d)(1). The law is clear that opinions from such sources are entitled to consideration and "should. . . be weighed by the ALJ according to the same factors applicable to opinions from acceptable medical sources." *McDonald v. Astrue*, 492 F. App'x 875, 882 (10th Cir. 2012) (citing *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir.2007)). This requires that these opinions be weighed using the factors set out in 20 C.F.R. § 416.927(d). *Id.* While Ms. Richards' opinions cannot establish the existence of a medically determinable impairment, they "may be based on special knowledge of the [claimant] and may provide insight into the severity of the impairment(s) and how it affects the [claimant's] ability to function." SSR 06-03p, 2006 WL 2329939, at *2-4 (2006). Indeed, opinions from such sources may even be entitled to greater weight than that of a treating physician. *Id.* at *5.

The second reason the ALJ stated for discounting Ms. Richards' opinion is that he would have expected a person with such limitations to have frequent hospitalizations. This is, however, pure speculation. There is no law or evidence to support the ALJ's speculative inference that a person with extreme impairments in multiple areas of mental functioning would require hospitalization. The Tenth Circuit has insisted that an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record. *Winfrey*, 92 F.3d at 1021-22.

The third and final reason for rejecting Ms. Richards' opinion—that her findings "are contradictory to other evidence of record," is not supported by substantial evidence. The ALJ cited to Exhibit 15F (AR 320-41) which contains Ms. Richards' treatment notes. (*Id*. 16.) Thus, it appears the ALJ is asserting that Ms. Richards' treatment notes contradict her opinion of the severity of Plaintiff's mental impairments. The ALJ does not explain, however, how the treatment notes contradict Ms. Richards' opinion, and I am "left to speculate what specific evidence led the ALJ to [his conclusion]". *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). This is improper. *Id*.; *see also Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) ("It may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, but that is best left for the ALJ himself to do in the proceedings on remand").

Moreover, the treatment notes do not appear to be inconsistent with extreme mental impairments. For example, the notes indicate that due to anxiety, Plaintiff scratches at her psoriasis, not knowing that she is doing it until she sees blood on her hands. (AR 326.) "She was extremely tangential, which is usual for her, jumping from subject to subject, having a difficult time remembering the questions that she wanted to talk about." (*Id.*) She sees shadows and hallucinations, which have improved, but are still quite bothersome to her. (*Id.*) "[S]he has very low tolerance and patience for anybody, she finds herself being very irritable, not caring for life, having little motivation, difficulties with concentrating, she has isolated herself from most of her friends." (*Id.*) These findings appear to be supportive of Ms. Richards's severity assessment. Moreover, the ALJ failed to acknowledge that Ms. Richards' opinion is supported by the

opinion of Dr. Vega and, to some extent, Dr. Valette, which opinions are discussed below. In short, I find that the ALJ's reasons for rejecting Ms. Richards are not valid. Accordingly, a remand is also required on this basis.

I now turn to the opinion of consultative examiner Dr. Vega, which the ALJ also rejected. (AR 16.) Dr. Vega opined that Plaintiff "would have difficulty in meeting demands from competitive employment" (AR 315-16), and assessed her GAF at 45 to 50, indicative of serious symptoms.[6] (*Id.* 316.) He, like Ms. Richards, found that Plaintiff is markedly-to-extremely impaired in most areas of mental functioning. (*Id.* 318-19.) This would certain impact, if not eliminate, Plaintiff's ability to work. Indeed, the ALJ acknowledged that Dr. Vega "stated the claimant had serious symptoms or serious limitations in her functional ability and would not be able to function on a day-to-day basis in a work environment." (*Id.* 16.) Yet the ALJ gave this opinion "no weight" (*id.* 16), stating that it was "based entirely on the claimant [sic] statements without any objective findings or durational records." (*Id.*) The ALJ also stated, without explanation, that the opinion was "unsupported, inconsistent, and contradictory." (*Id.*) Plaintiff claims, and I agree, that the ALJ's reasons for rejecting Dr. Vega's opinion are not valid.

The first reason stated by the ALJ for giving no weight to Dr. Vega's opinion— that he based his opinion entirely on Plaintiff's statements without any objective findings

---

[6] "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012). A GAF score of 41 to 50 indicates "'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Id.* (quotation omitted).

or durational records, is not supported by the evidence in the record and is pure speculation. First, I note that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (quotation omitted). While an ALJ may reject a medical opinion if it is based *solely* upon a claimant's subjective complaints, such a conclusion fails unless supported by evidence. *See Langley*, 373 F.3d at 1121. Here, the ALJ's conclusion is not supported.

Dr. Vega's report indicates that in addition to interviewing Plaintiff, he performed a mental status examination which formed the basis of his opinion. (AR 314-15). He noted specific findings from this examination that supported his opinion, includng the fact that she "present[ed] with a significant psychopathology, presenting with significant difficulty staying focused on tasks", "[h]er emotions were quite variable" and "[h]er thought processes were noted to be quite tangential". (*Id*. 315-16.) Contrary to the ALJ's finding, "[a] psychological opinion need not be based on solely objective 'tests'; those findings 'may rest on observed signs and symptoms or on psychological tests.'" *Thomas*, 147 F. App'x at 759 (quotation omitted). Moreover, Dr. Vega reported that he had evaluated Plaintiff since 2005 on six separate occasions for AND ("Aid to the Needy Disabled") assistance, "and her behavior has been similar in all of these evaluations." (AR 316.) The ALJ completely ignored this opinion. In light of this, the ALJ's finding that Dr. Vega's opinion was based merely on Plaintiff's statements is without merit.[7]

---

[7] The ALJ also stated that Dr. Vega's opinion was not based on durational records, even though Dr. Vega stated he had evaluated Plaintiff numerous times. Yet the ALJ accepted the state agency physician's opinion who never seen Plaintiff. As discussed earlier, an ALJ cannot summarily reject a

The second reason given by the ALJ for rejecting Dr. Vega's opinion—that the opinion was "unsupported, inconsistent, and contradictory" is also not valid. First, Dr. Vega's opinion was supported by specific findings made from a mental status examination as discussed above. Further, the ALJ failed to explain how the report was inconsistent or contradictory. This is a mere conclusion that is unsupported and not linked to any evidence. Accordingly, a remand is also required so that the ALJ can properly weigh Dr. Vega's opinion.

I also agree with Plaintiff that the ALJ erred in connection with consultative psychologist Dr. Valette's opinion. Dr. Valette noted that Plaintiff "seems hypomanic", was "all over the place", rambled, and was confused at times. (AR 215.) He found that "[h]er thought process seems confused, disorganized and scattered", although he believed Plaintiff "was trying to do as best as she could." (*Id.* 216.) Dr. Valette also indicated that Plaintiff is extremely labile, and has much difficulty focusing and answering questions. (*Id.* 216-18.) He diagnosed Plaintiff with Bipolar II disorder, and assessed a GAF score of 50 to 55, indicating moderate to serious symptoms. (*Id.* 217-18.) He did not, however, opine as to Plaintiff's mental functional limitations.

The ALJ stated that while the evaluation did not give any work limitations, he accepted it "as a general assessment of the claimant's mental functioning." (AR 14.) He further stated that this indicated that Plaintiff "had moderate symptoms or moderate difficulty in social and occupational functioning. (*Id.*) However, he failed to

---

physician's opinion for containing the same defect contained in the opinion which the ALJ accepted. *Teter*, 775 F.2d at 1106.

-16-

acknowledge that the lower end of the GAF score assessed by Dr. Valette indicates severe symptoms that would likely have an impact on a claimant's ability to work. See *Groberg v. Astrue*, 415 F. App'x 65, 70-71 (10th Cir. 2011); *Lee*, 117 F. App'x at 678. The ALJ improperly ignored this, instead picking and choosing only the part of Dr. Valette's GAF score that supports nondisability. This was error. *Carpenter,* 537 F.3d at 1265 (an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence").

Finally, in light of the failure to properly weigh and consider the opinions of Ms. Richards, Dr. Vega and Dr. Valette, this may well impact the ALJ's reliance on the opinion of the state agency psychologist, Dr. Frommelt, whose opinion will also need to reweighed. On that issue, the ALJ should keep in mind that "the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson*, 366 F.3d at 1084. Further, an ALJ's reliance on an agency medical consultant's opinion is reasonable only insofar as that opinion "finds adequate support in the medical evidence." *Lee,* 117 F. App'x at 687 (citing SSR 96-6P, 1996 WL 374180, at *2).

Nonetheless, I also find error in the ALJ's reliance on Dr. Frommelt's opinion, as the ALJ adopted the opinion but not incorporate all of the restrictions that Dr. Frommelt opined to. (AR 19.) Specifically, I find that the ALJ's social limitation, prohibiting Plaintiff from dealing with the public (*id.* 13), is too narrow. Dr. Frommelt did not just restrict Plaintiff from dealing with the public, she restricted Plaintiff to "an environment [with] limited social demands." (*Id.* 60.) Dr. Frommelt explained this limitation by stating

that "hypomania affect[s] ability to interact and is distracting to other[s]." (*Id.*)  When asked in the form to rate the individual's social interaction limitations, Dr. Frommelt indicated the following limitations: 1) the ability to interact appropriately with the general public is moderately limited; 2) the ability to accept instructions and respond appropriately to criticism from supervisors is moderately limited; 3) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes is moderately limited.  Therefore, when Dr. Frommelt's opinion is taken in context of her responses in the entire form, it is evident that her limitation of social demands applies not just to the general public, but to  coworkers and supervisors as well.[8]

While interaction with the public is not critical to all jobs, such as manufacturing jobs, even those jobs require interaction with coworkers.  Further, all jobs require interaction with supervisors.  The ALJ gave no explanation as to why he limited Plaintiff's social interactions only to the general public.  This is also error that requires a remand.  *See Haga*, 482 F.3d at 1208.

III.     CONCLUSION

In conclusion, I find that this case must be reversed and remanded for further fact finding.  I find that the ALJ erred in assessing Plaintiff's RFC and in weighing the medical providers' opinions regarding Plaintiff's physical and mental impairments.  Accordingly, it is

---

[8] The Commissioner incorrectly suggests that the ALJ can take isolated statements from a medical report out of context and interpret them in isolation from the rest of the report.  No case law suggests that such an approach is proper.

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated: March 30, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge